THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD BLAKE, Defendant-Appellant.

Second District   No. 83—678

Opinion filed February 11, 1985.

Robert J. McDonnell, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Marlene V. Newton, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:
Defendant, Richard Blake, appeals from his convictions following a jury trial in the circuit court of Du Page County for the offenses of aggravated kidnaping (Ill. Rev. Stat. 1981, ch. 38, par. 10—2), deviate sexual assault (Ill. Rev. Stat. 1981, ch. 38, par. 11—3), and intimidation (Ill. Rev. Stat. 1981, ch. 38, par. 12—6). Defendant contends on appeal that the State failed to prove him guilty of the offenses beyond a reasonable doubt, that defendant's conviction for intimidation must be vacated as the lesser included offense of deviate sexual assault and the cause remanded for resentencing, and that the trial court erred in sustaining the State's objection to a portion of his closing argument. We affirm.

Although the testimony of defendant and of the 19-year-old victim differ in many important respects, we briefly summarize the facts concerning the incident which resulted in defendant's conviction. On the morning of September 4, 1982, the victim arrived at the Bloomingshire Restaurant, where she encountered defendant in the restaurant parking lot. Either by force or consent, the victim got out of her car and entered defendant's van. From the parking lot, defendant drove the van several miles, turned off the highway, and parked in a cornfield. There, according to defendant, the victim agreed to perform an act of fellatio for $40. Because he was unable to achieve an orgasm, defendant testified, they left the back of the van and engaged in intercourse on the nearby grass. Following the intercourse, defendant testified he offered defendant only $20 because he had again not achieved an orgasm. The victim angrily refused the reduced

payment and ran away from the van through the cornfield. In contrast, the victim stated she was driven to the cornfield at knife point where she was compelled to perform an act of fellatio. Defendant achieved an orgasm, ordered her outside of the van, and drove away.

After a jury trial, defendant was convicted on all three offenses. On June 20, 1983, defendant filed a motion for a new trial which the trial court denied on July 18, 1983. On July 25, 1983, the trial court sentenced defendant to concurrent terms of eight years, eight years and two years respectively for the deviate sexual assault, aggravated kidnaping and intimidation offenses. Defendant filed his notice of appeal that same day.

Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt of any of the offenses. In order to consider defendant's argument, the necessary elements of each offense must be enumerated. A person commits intimidation when with intent to cause another to perform an act, he communicates to that person a threat to inflict physical harm on the person threatened. (Ill. Rev. Stat. 1981, ch. 38, par. 12—6(a)(1).) The offense of kidnaping is committed when a person knowingly either secretly confines another against his will or by force or threat of imminent force carries a person from one place to another with intent secretly to confine him against his will. (Ill. Rev. Stat. 1981, ch. 38, pars. 10—1(a)(1), (2).) Aggravated kidnaping involves the commission of another felony during a kidnaping. (Ill. Rev. Stat. 1981, ch. 38, par. 10—2(a)(3).) To prove a deviate sexual assault, the State must establish that defendant, by force or threat of force, compelled another to perform an act of deviate sexual conduct. Ill. Rev. Stat. 1981, ch. 38, par. 11—3.

The evidence presented was sufficient to support the jury's verdict on each of these offenses beyond a reasonable doubt. Count III of the State's indictment asserted defendant committed the offense of intimidation "in that said defendant, with the intent to cause [the victim] to perform an act of Deviate Sexual Conduct, communicated to [the victim] a threat to inflict, without lawful authority, physical harm upon [the victim] ***." The testimony of the victim was that defendant pointed a knife at her throat while she was in her car and stated, "I should kill you" and "I should cut your throat." After pushing her toward and ordering her into the van, defendant, according to the victim's testimony, followed her into the back of the van, whereupon he stroked her throat and stated "Such a pretty throat. I should cut it." Later, while driving the van, defendant told the victim (age 19) that she would never live to see the age of 20. Throughout the incident in the cornfield during which the victim performed a deviate sexual act upon defendant, the victim testified, defendant pointed a knife at her

and even touched the knife blade to her skin. These facts, if accepted as true by the jury, established beyond a reasonable doubt that defendant committed the offense of intimidation.

The victim's testimony also supports defendant's conviction for the aggravated kidnaping offense. The victim testified that she was forced at knife point to leave her car and enter defendant's van. Additionally, the victim stated she was threatened at knife point throughout the ride in the van. Since confinement in an automobile satisfies the statutory requirement of secret confinement (*People v. Harris* (1979), 68 Ill. App. 3d 12, 14, 385 N.E.2d 789, 791), then defendant was proved guilty of kidnaping beyond a reasonable doubt if the jury believed the victim's testimony that she was confined against her will.

Defendant's conviction for aggravated kidnaping is dependent upon whether the evidence established he committed another felony—deviate sexual assault—during the kidnaping. Both defendant and the victim agree that the victim performed an act of fellatio upon defendant. The dispute centers around whether defendant by force compelled the victim to perform the act. The victim testified that defendant ordered her to perform oral sex on him and that during the act he told her she had better know what she was doing or she would die. While the victim performed the fellatio act, defendant stroked her back, neck and head with the blade of the knife and even grabbed her nipple "point[ing] the blade against it with pressure." These facts, if believed by the trier of fact, established a deviate sexual assault beyond a reasonable doubt.

Based upon this review of the record, evidence was introduced which supported conviction on each of the three offenses. The central issue, therefore, is one of credibility, for defendant and the victim—the only witnesses to the events inside the van—presented conflicting testimony on the events precipitating this prosecution. The credibility of the witnesses and the weight to be accorded their testimony are matters for the jury's determination. (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 399 N.E.2d 1346.) Even the testimony of the complaining witness alone contradicting the testimony of the accused, if positive and credible, is sufficient to sustain a conviction for deviate sexual assault. (*People v. Hamil* (1974), 20 Ill. App. 3d 901, 314 N.E.2d 251.) When the conviction is based upon the testimony of the victim, it must be clear and convincing or otherwise corroborated by other evidence. *People v. Cornes* (1980), 80 Ill. App. 3d 166, 172, 399 N.E.2d 1346, 1350.

With these principles in mind, we review the salient testimony of both the victim and defendant and the other evidence to determine if a reasonable doubt exists concerning defendant's conviction. The vic-

tim testified that she arrived at the parking lot of the Bloomingshire Restaurant at 11:28 a.m. on Saturday, September 4, 1982, for the purpose of meeting a friend, Joel Maschinski, to repay a $40 debt she owed him for concert tickets. Maschinski's testimony confirmed the purpose of the meeting and established that he was 10 to 15 minutes late, arriving at approximately 11:45 a.m. The victim further testified that she waited in her car with the radio playing for Maschinski to arrive. In contrast, defendant testified he met the victim across the street in a Dunkin Donuts shop, where she propositioned him. He declined, but agreed to drive her to her car parked across the street in the restaurant parking lot. The jury could have found it unlikely that the victim would ask him for a ride across the street, especially after he had just declined her offer for sex.

The victim further testified defendant arrived in his maroon van in the restaurant parking lot, which was deserted except for her car, got out and tried to open the restaurant door, and then asked the victim if she was employed by the restaurant or knew the owner. She said she didn't, he again tried the door, she turned to look for Maschinski and suddenly defendant through the car window pointed a knife at her. After threatening to cut her throat, he forced her to enter the van.

Defendant's version was that after dropping the victim off in the parking lot, he tried the restaurant door and then came back to the car and asked the victim if her offer was still good. She said it was, and defendant suggested they use his van. Once there, they kissed and caressed, but defendant said he was nervous because of the people nearby. Then, the victim heard a car approach, looked out the back window, identified the driver as Maschinski and ordered defendant to drive away so that Maschinski wouldn't discover them and inform her boyfriend.

The jury could have found several problems exist with defendant's version. First, since the victim had agreed to meet Maschinski at the restaurant during the time she and defendant were in the van, the victim would not likely risk being caught by agreeing to perform the act in the parking lot. Furthermore, both Maschinski and a police officer who later arrived at the restaurant found the victim's car with the keys in the ignition, with the ignition in the auxiliary position, and with the radio playing. While defendant testified the victim left the keys in the car because she stated "this won't take long," the jury could have concluded the victim would not likely leave the car in this condition if she were concerned about being discovered, because she knew Maschinski was due to arrive at any moment. Finally, defendant's explanation for his inability to become aroused in the van—that

there were a lot of people around—conflicts with the victim's statement that the restaurant parking lot was empty. Despite his testimony that he was nervous, defendant was the person who suggested that they enter the van to have sex. Also, defendant testified the victim observed Maschinski out of the back window of the van, while the victim testified the back window of the van was too dirty to afford a view of the outside.

Both defendant and the victim testified that they then left the parking lot in defendant's van. Defendant argues on appeal that the victim's testimony is not credible because she had several opportunities but never attempted to escape while the van was stopped at traffic lights. However, as emphasized by the State, the victim testified salt bags stacked more than 2½ feet high blocked the rear-door exit and that she did not see the side door of the van until the van was parked in the cornfield. Throughout this period, the victim testified she was at least unclothed from above her waist and she feared for her life. Under these circumstances, the jury could have concluded the victim's failure to attempt to escape was understandable and reasonable and did not undermine her credibility.

Another fact damaging to defendant's recitation was the introduction into evidence by the State of the victim's severed bra. The victim testified that defendant cut her bra from her chest with his knife while they were in the van. Michael Podlecki, a forensic scientist with the Illinois Department of Law Enforcement, confirmed during his testimony that the bra was cut, not torn. Defendant testified that the bra was not severed when he left the victim in the cornfield. Podlecki's testimony affords credibility to the victim's version of the incident; otherwise, the victim would have had to have cut her own bra while running through the cornfield. The State's exhibits 12A, B and C—photographs of the victim's knees and legs taken at the hospital—also support the victim's testimony. The photographs showed the victim's knees badly swollen and red, which she attributed to kneeling on the floor of the van. The jury could have concluded that were the sexual conduct consensual, the victim would not have endured such a position, but instead would have suggested an alternative stance.

The victim's actions observed by others following the incident also lend credence to her version of the attack. Ronald Scarbro, an employee of J&L Auto Body, observed the victim crying and very upset immediately after the incident. He testified he telephoned her boyfriend for the victim because she was unable to dial the phone herself. Both Jeffrey A. Fritz, a Bloomingdale police officer, and Maschinski observed the victim at the body shop and testified she was sobbing and visibly upset. Fritz stated the victim told him she had been sexu-

ally attacked. To believe defendant's version, the jury would have had to have concluded that the victim concocted this hysteria to support her sexual assault charge. Furthermore, the only explanation offered by defendant for the victim's "fabrication" is revenge for the fact that defendant offered the victim only $20 instead of the agreed-upon $40 for her services that day. The jury could have concluded that the victim would not likely feign this attack and then continue this deception throughout interviews with police officers, a hospital examination and an arduous trial process merely because she was not paid enough money.

While the victim's credibility is suggested by her trial testimony, defendant admitted that he lied to a police officer at his home several days after the incident, telling the officer that he had not stopped at the restaurant on the day in question. While defendant explained that he lied because his family was at home while he was being interviewed by the police officer, his untruthful statements to the officer do indicate a propensity to lie and undermine his own credibility. An additional fact discrediting defendant's version is his inconsistent testimony on whether or not he achieved an orgasm during intercourse with the victim. At one point during his testimony, he explained he only offered the victim $20 because he had not achieved an orgasm. However, he also testified he was unsure whether he achieved an orgasm. The jury could have believed that defendant's inconsistent testimony was offered to explain the presence of sperm later found in the victim's vagina.

▆ The only factor arguably supporting defendant's version is the testimony that the physical examination of the victim at the hospital revealed no residual semen in the victim's mouth. Both the victim and defendant testified she performed oral sex on defendant, but the victim testified he ejaculated into her mouth and she swallowed the discharge, while defendant testified he was unable to ejaculate, but later might have ejaculated into her vagina during intercourse with her. The hospital test did register positive for sperm in the victim's vagina. However, the State, through the victim, established she had engaged in intercourse with her boyfriend at 10 a.m. on the day of the incident. The State further established through Podlecki that the semen might not test positive in her mouth because she swallowed the semen and spit while running through the cornfield, because semen breaks down over time, and because the victim was not tested until more than one hour after the incident. Thus, the absence of semen in the victim's mouth does not create a reasonable doubt about defendant's guilt for any of the three offenses for which defendant was convicted.

■ Defendant next contends his conviction for the offense of intimidation must be vacated and the cause remanded for resentencing because his convictions for intimidation and deviate sexual assault were based upon the same physical act and because intimidation is the lesser included offense of deviate sexual assault. In *People v. King* (1977), 66 Ill. 2d 551, 566, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, the supreme court held that where more than one offense stems from a series of incidental or closely related acts *and* the offenses are not by definition lesser included offenses, convictions with concurrent sentences can be maintained. The *King* rule is conjunctive. Section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 2—9) provides:

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein."

The greater offense must include every element of the lesser offense plus one or more elements; the lesser offense does not have any element that is not included in the greater one. (*People v. Garza* (1984), 125 Ill. App. 3d 182, 188, 465 N.E.2d 595, 600.) A determination whether one offense is the lesser included of the other necessarily requires an examination of the elements of each offense. A person commits intimidation when "with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat *** without lawful authority *** [to] [i]nflict physical harm on the person threatened or any other person or on property ***." (Ill. Rev. Stat. 1981, ch. 38, par. 12—6(a)(1).) The offense of deviate sexual assault is committed when "[a]ny person of the age of 14 years and upwards ***, by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct ***." Ill. Rev. Stat. 1981, ch. 38, par. 11—3(a).

Comparison of the elements of the two offenses reveals that intimidation is the lesser included offense of deviate sexual assault. Both offenses require a threat of force. Although intimidation requires that the threat be communicated, this requirement is implicit in the offense of deviate sexual assault. In an analogous context, the court in *People v. Smalley* (1976), 43 Ill. App. 3d 600, 602, 357 N.E.2d 93, 95, ruled that although the requirement that the threat be communicated was not specified in the offense of rape, "in the rape context the communication of a threat of force is inherent in the use

of force." The *Smalley* court held that intimidation was the lesser included offense of rape. Since the only distinction between rape and deviate sexual assault lies in the nature of the sexual violations involved (*People v. Weis* (1983), 120 Ill. App. 3d 597, 458 N.E.2d 157), *Smalley* is persuasive support for the conclusion that intimidation is the lesser included offense of deviate sexual assault.

Intimidation also requires that the offender intend to cause another to perform an act; deviate sexual assault requires that the offender compel another to perform an act of deviate sexual conduct. However, inherent in the deviate sexual assault requirement that one compel another to commit an act is the intent to cause that person to perform the act. Therefore, the elements of the two offenses are identical for purposes of the lesser included offense analysis. The only other term which is contained in the intimidation offense but not in the deviate sexual assault offense is "without lawful authority." However, this language is not an element of the offense. (See *People v. Hubble* (1980), 81 Ill. App. 3d 560, 564, 401 N.E.2d 1282, 1285.) In addition, in *People v. Weis* (1983), 120 Ill. App. 3d 597, 458 N.E.2d 157, this court concluded unlawful restraint was the lesser included offense of deviate sexual assault despite the language in the unlawful restraint offense that it be committed "without legal authority." Thus, "without lawful authority" is not an additional element of the offense of intimidation, and that language does not preclude the conclusion that intimidation is the lesser included offense of deviate sexual assault. Because defendant was convicted both of intimidation—the lesser included offense—and of deviate sexual assault, the intimidation conviction must be vacated.

■ In cursory fashion, defendant requests this court to remand this cause for resentencing because the trial judge may have been influenced by the intimidation conviction in sentencing him on the other offenses. Normally, the appellate court is required to examine the transcripts of the sentencing hearing when one conviction is vacated to determine if the trial court was influenced by the vacated conviction in imposing the other sentence. (See *People v. Sanford* (1983), 119 Ill. App. 3d 160, 456 N.E.2d 333.) However, here defendant has not included in the appellate record the report of proceedings of the sentencing hearing. The appellant in a criminal case is responsible for providing a complete appellate record for review. (*People v. Hefley* (1982), 109 Ill. App. 3d 74, 440 N.E.2d 173.) A reviewing court will indulge in every reasonable presumption favorable to the conclusion reached by the trial court, and any doubt arising from the incomplete record will be resolved against the appellant. (*People v. Wilson* (1981), 92 Ill. App. 3d 370, 415 N.E.2d 1315.) An appellant who challenges

his sentence but who fails to provide the relevant reports of proceedings is not entitled to relief. (See *People v. Holman* (1976), 43 Ill. App. 3d 56, 356 N.E.2d 1115; *cf. Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 661, 435 N.E.2d 852, 859-60.) Since defendant here has failed to provide this court with the report of proceedings of the sentencing hearing which is necessary to review the trial court's sentencing decision, we conclude that the sentences imposed were proper and that the trial court did not consider the intimidation conviction in imposing these sentences on the aggravated kidnaping and deviate sexual assault convictions.

■ Defendant's final contention is that the trial judge erred in sustaining the State's objection to one statement in defense counsel's closing argument. The relevant portion of the record is as follows:

"[Defense Counsel McDonnell]: Now, we, as attorneys have certain rights, duties and obligations. The State has a duty.

The State has to prove its case beyond a reasonable doubt and at various times during the course of a trial may have an opportunity to bring in additional evidence, to-wit: After I rested, they had a right and indeed they did bring in what they call or we call rebuttal testimony.

Once the defendant takes the stand his character is in issue and if this man had anything against his character, *the State had a duty to tell you 12 people that he had indeed been in trouble in his lifetime.*

MR. KARMGARD: Objection.

THE COURT: Sustained.

MR. KARMGARD: I would ask that the jury be instructed to disregard that.

THE COURT: So ordered; disregard it.

MR. MCDONNELL: Well, there was no such evidence.

MR. KARMGARD: Objection.

THE COURT: Sustained.

MR. KARMGARD: I would ask that counsel be instructed not to go into this area and the jury disregard it.

THE COURT: Counsel, the objection has been sustained." (Emphasis added.)

Relying solely on this language, defendant contends the trial court prevented him from fairly arguing his case to the jury. However, as the preceding record demonstrates, defendant never challenged the State's objection or offered to the court a reason for reversing its ruling on the State's objection. More importantly, defendant's post-trial motion never assigned as error this specific ruling by the trial court. Although defendant filed a post-trial motion, his only arguable refer-

ence to this point of error alleged on appeal is the following statement:

"7. That the Court improperly allowed the prosecutor to continuously interrupt Defense counsel in closing arguments to the jury by holding numerous sidebars on objections by the State without foundation as to said objections."

Our supreme court in *People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, explained the rules regarding the necessity for post-trial motions in jury trials:

"[I]t is well settled that, when a defendant fails to make a timely objection at trial or in the post-trial motion, irregularities in the closing argument complained of on review are ordinarily deemed waived. [Citations.] Timely and specific objection at trial affords the court an opportunity to prevent most errors by sustaining the objection or instructing the jury to disregard the answer or remark. [Citations.] And specific references in post-trial motions to the reasons why a trial judge's actions or rulings were wrong enables [*sic*] him to reconsider their propriety in a less pressured environment. If an egregious error has actually occurred, the judge can order a new trial, thus avoiding the delay and expense of appellate review."

To be effective, a written post-trial motion must set forth with adequate specificity the error supporting a defendant's request for a new trial. (*People v. Lawson* (1980), 86 Ill. App. 3d 376, 397, 407 N.E.2d 899, 916.) In the case at bar, defendant's post-trial motion is wholly insufficient to have preserved his claim of error regarding the trial court's ruling on the State's objection to defendant's closing argument, and thus, he has waived this argument. Furthermore, the trial court's ruling does not amount to plain error. See 87 Ill. 2d R. 615.

Defendant's convictions for the offenses of deviate sexual assault and aggravated kidnaping are affirmed, and defendant's conviction and sentence for the offense of intimidation are vacated.

Affirmed in part, vacated in part.

NASH, P.J., and UNVERZAGT, J., concur.