THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID JAFFE, Defendant-Appellant.

Second District   No. 77-142

Opinion filed October 12, 1978.

David M. Schneider, of Pritzker & Glass, of Chicago, for appellant.

T. Jordan Gallagher, State's Attorney, of Sycamore (Phyllis J. Perko and Jan Tuckerman, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was found guilty of unlawful delivery of cannabis (Ill. Rev. Stat. 1975, ch. 56½, par. 705(e)), and sentenced to 3 years' probation, with the first 6 months to be spent in the county jail; the defendant was also fined $3000, ordered to make restitution of $550, and required, as a condition of his probation, to obtain or look for full time employment. He appeals contending that (1) he was not proven guilty beyond a reasonable doubt; (2) that the trial court erred in admitting certain hearsay evidence; (3) the trial court erred in admitting evidence of an alleged prior delivery of cannabis, and (4) that his sentence is unconstitutional and an abuse of the trial court's discretion.

The evidence may be summarized as follows: On October 30, 1974, Illinois Bureau of Investigation agents, DeFranco and Andreen, met Bruce Evans, a paid informant, in a university parking lot in DeKalb. Evans and DeFranco then left in DeFranco's car, and proceeded to Bunky's Hot Dog Stand. When they arrived, Agent Andreen was already inside. Evans made several phone calls and DeFranco and Evans went outside.

As DeFranco and Evans sat at the picnic table, Evans told DeFranco, "here he comes," and DeFranco observed James Pionke approaching them. DeFranco testified, over a defense objection, that after introductions were made, Pionke told DeFranco and Evans that, "[m]y man's got the stuff in his car over in the next lot," and asked "[d]o you have the money?" DeFranco responded that he had the money and the three walked to an adjacent parking lot, where DeFranco observed the defendant standing in front of a 1966 Chevrolet. DeFranco took down the license number of the Chevrolet, which he stated in his testimony belonged to the defendant.

Evans introduced DeFranco to the defendant and told the defendant that DeFranco "was here to buy the grass." DeFranco asked, "how much?"; the defendant replied, "$550," and Pionke said that he would get "the stuff" and put it in Evans' car. DeFranco stated that he "would like to see the bag" before he purchased its contents, and Pionke responded "I have it. I will leave it in [Evans'] car. Just pay Jaffe [the defendant]." Pionke took a bag out of the defendant's Chevrolet and placed it in Evans' vehicle. DeFranco counted $550 in bills as he gave them to the defendant, counting "very fast." The defendant shook his head, "like he was confused," and asked "[i]s it all there?" DeFranco slowly recounted the bills. After the defendant had received the entire $550, he put the money in his pocket. While Pionke was still placing the bag in Evans' car, the defendant asked DeFranco if he had access to "acid" and DeFranco responded that he did not. The defendant then stated that he was "in a

hurry" and had to go and got into the Chevrolet and drove away. Subsequently, field and laboratory tests indicated that the bag which had been placed in Evans' car contained more than 600 grams of cannabis.

The testimony of DeFranco, Andreen and other officers who were involved in surveillance of the transaction, conflicted on certain points. DeFranco testified that he, Andreen, and other officers field tested the contents of the bag in an alley, whereas Andreen and other officers testified that the field test was conducted at the home of one of the officers. Further, although DeFranco recalled that he had first seen the defendant after they walked to the parking lot which was adjacent to the hot dog stand, Andreen and other officers who viewed the transaction recalled that the defendant had been with Pionke, when he first approached Evans and DeFranco.

The defendant did not testify. The only defense witness was Marc Kurzman, an expert who was presented in an effort to discredit the procedures used by the State's chemist to determine that the substance introduced into evidence was cannabis.

■■■ The defendant has cited a number of cases holding that mere presence at the scene of a crime does not render a person culpable for the offense (e.g., People v. Washington (1970), 121 Ill. App. 2d 174), and argues that in this case, "any criminal involvement can only be inferred from speculation stemming from the mere presence of the defendant," and that he was therefore not proven guilty beyond a reasonable doubt. We disagree. The record would support a finding that the defendant was an active and willing participant in the transaction. The defendant could not have been ignorant of the purpose of the transaction, since DeFranco stated at the outset that "we are going to buy grass," and, as noted below, there was evidence that the defendant had previously engaged in a similar sale to Evans. When DeFranco asked the price, it was the defendant who responded, "$550," and it was the defendant to whom DeFranco gave the cash consideration for the illegal sale, and it was the defendant who accepted the $550. Finally, DeFranco testified at trial that Pionke removed the bag which held the cannabis from the defendant's car. Although there were certain discrepancies in the testimony presented by the State, the presence of such discrepancies presented questions of credibility to be resolved by the trier of fact, and would not justify this court in substituting its judgment for that of the trial judge, by setting aside the trial court's finding. People v. Patrick (1977), 46 Ill. App. 3d 122.

● 3, 4 The defendant's next contention is that the trial judge committed reversible error by considering hearsay evidence. The defendant asserts that the court erred in allowing DeFranco to testify that Pionke told him, outside of the presence of the defendant, that "[m]y man's got the stuff in his car over in the next lot. Do you have the money?" and that the court

should not have allowed DeFranco to testify that Evans told the defendant, "We're here to buy the grass."

Again, we are forced to disagree. Pionke's statements to DeFranco and Evans fell within the "co-conspirator exception" to the hearsay rule. The co-conspirator exception "allows acts and declarations of one co-conspirator to be admitted against another who is a defendant, even when the acts and declarations are made out of the presence of the defendant." (*People v. Jackson* (1977), 49 Ill. App. 3d 1018, 1020.) There is no need for the State to introduce evidence of verbal or written communication between alleged conspirators to establish a conspiracy, "where the acts themselves, subsequent to the alleged conspiracy, inferentially establish the existence of an agreement." (*People v. Graham* (1971), 1 Ill. App. 3d 749, 752.) Here there was sufficient evidence of an apparent concert of action between Pionke and the defendant to establish the existence of a conspiracy between the two, and there was, therefore, no error in the trial court's admission of DeFranco's testimony regarding his conversation with Pionke.

■■ The other instance of alleged improper hearsay, involving Evans' out-of-court statement that "[w]e're here to buy the grass," was offered to show that the defendant was put on notice of the unlawful nature of the transaction, and was, thus, not hearsay;

"[h]earsay evidence includes only those statements made outside court which are offered to prove the truth of that which is asserted in the statement." Hunter, Trial Handbook for Illinois Lawyers §65:2 (4th ed. 1972).

The defendant's contention that the trial court had committed reversible error when it admitted evidence of an alleged prior delivery of cannabis by the defendant, presents a closer question. The evidence complained of consisted of testimony by police officers describing an incident which occurred 6 days earlier on October 24, 1974. On that date, three police officers met Bruce Evans at a church. The officers set up a telephoto camera and searched Evans, giving him two $10 bills. As the officers watched, Evans went to an adjoining parking lot. After a short time, the defendant appeared in a 1965 or 1966 Chevrolet. The defendant approached Evans, and after a short conversation, was observed exchanging money for two plastic bags; the defendant then put the money in his wallet, and left in his car. Subsequent analysis showed that the plastic bags contained 16 grams of cannabis. Counsel for the defendant made a timely objection to the admission of all of this testimony.

■■ Was this evidence of an earlier criminal transaction improper? The general rule is that evidence of offenses other than those for which a defendant is being tried is inadmissible. (*People v. Romero* (1977), 66 Ill.

2d 325, 330.) However, there are well established exceptions to this rule: " 'Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense.' (*People v. McDonald* (1975), 62 Ill. 2d 448, 455.)" (*People v. Romero* (1977), 66 Ill. 2d 325, 330.) (See also *People v. Cole* (1963), 29 Ill. 2d 501, 505.) In this case, the State did not produce any witness who actually observed the defendant handling the bag containing the cannabis, and the defendant has argued that the evidence merely proved that the defendant was present at the scene of the unlawful delivery. The evidence of the prior transaction involving Bruce Evans tends to rebut such a construction of the proof; if the defendant had engaged in an earlier sale of cannabis to Evans, he could hardly have been unaware of the nature and purposes of the transaction on October 30, 1974, which was arranged by Evans. Thus, evidence of the transaction on October 24, 1974, was probative of the defendant's intent when he dealt with Evans and DeFranco on October 30, 1974. The trial court's determination as to the admissibility of evidence of other crimes will not be reversed unless it is clearly an abuse of sound judicial discretion (*People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516, and in this case we find that the court did not abuse its discretion by admitting such evidence of a prior criminal transaction involving the defendant.

■■ Finally, the defendant has attacked the sentence which he received upon a number of grounds. The defendant argues that his sentence is violative of article I, section 11 of the 1970 Constitution of the State of Illinois and of sentencing criteria set forth in section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1). We note that the possession of more than 500 grams of cannabis is a Class 2 felony (Ill. Rev. Stat. 1975, ch. 56½, par. 705(e)), and is punishable by a sentence of 1 to 20 years imprisonment (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(3)). The trial judge was obviously in the best position to review many factors, such as the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits and age," which go into a determination of the proper sentence to be imposed in a particular case, and a court of review may not alter a sentence imposed by the trial court, absent a showing of an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) In this case, we cannot hold that the sentence which the defendant received constituted an abuse of the court's discretion. The defendant was, at the time of the offense, an alderman of the City of DeKalb, and was found to have participated in the sale of a

large quantity of cannabis, a controlled substance; the trial judge may have properly felt that any lesser sentence, under the circumstances, would have depreciated the seriousness of the defendant's conduct. In any event, it would be error for this court to substitute its judgment for that of the trial judge who heard the case.

■■ ■ The defendant raises two further questions regarding his sentence. He notes that co-defendant, Pionke, pleaded guilty and received a sentence of two years' probation and a $1000 fine. The defendant argues that by sentencing him to three years' probation, with six months of incarceration, a $3000 fine and requirement that he make restitution, the trial court was "punishing" him for asserting his constitutional right to a trial. In support of this view the defendant cites an affidavit filed by defense counsel, as part of a post-trial motion, wherein counsel stated that he had received a phone call from the trial judge, in which the judge remarked that "if David Jaffe proceeded to trial, he should be advised that he cannot expect to receive a sentence similar to that offered at the pretrial negotiations." Such a remark by the trial judge was an accurate statement of the law (*cf.* Supreme Court Rule 402(d)(3)) (Ill. Rev. Stat. 1975, ch. 110A, par. 402(d)(3)), and in no way supports the assertion that the defendant was "punished" for going to trial, nor is there anything else in the record which would support such an assertion. Similarly, while the defendant has argued that the "gross disparity" between his sentence and that of Pionke violated his right to equal protection of the law, we cannot make such a finding on the record before us. While we recognize the principle that defendants similarly situated should not receive grossly disparate sentences, a defendant who contends that fundamental fairness requires reduction of a disparate sentence has the burden to produce a record from which a rational comparison between the two sentences can be made. Here the defendant has not provided this court with such records, as the transcript of Pionke's guilty plea hearing, sentence hearing, or Pionke's presentence report, and there is, therefore, an insufficient record for this court to make a rational comparison between the two sentences. *People v. Holman* (1976), 43 Ill. App. 3d 56.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.