THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARMANDO SANCHEZ, Defendant-Appellant.

First District (1st Division)   No. 85—3284

Opinion filed November 2, 1987.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Mary C. Morris, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a jury trial, defendant, Armando Sanchez, was found guilty of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), and was sentenced to 10 years' imprisonment.

On appeal, defendant contends that (1) the State violated discovery by failing to disclose the existence of an informant who did not testify; (2) his 10-year sentence is excessive; (3) the trial judge's remarks during *voir dire* deprived him of a fair trial; (4) hearsay testimony was improperly admitted; (5) he was denied a fair trial by the State's opening statement and closing argument; and (6) he was not proved guilty of residential burglary beyond a reasonable doubt. For the reasons that follow, we affirm.

On October 27, 1983, Gustavo Comacho returned to his home, located at 1639 W. Farragut in Chicago, sometime after 2:15 p.m., the end of his shift at the Curtis Candy Company, his place of employment. At about 4 p.m., Comacho went to work at this family's variety store. He returned home between 8:30 p.m. and 9 p.m. and found that someone had broken open his rear door. He discovered that his locked safety box, containing jewelry and currency among other things, was missing. In particular, a unique purple amethyst ring with a Columbian insignia was in the box.

Detectives Alan Issac and James Elliott responded to the report of a residential burglary at the Comacho home. Sandra Comacho, Mr.

Comacho's 12-year-old daughter, acted as interpreter for her father, who could not speak English. After speaking with neighbors of the Comacho's, the detectives compiled a list of people who were near the area at the time of the burglary. The list included the nicknames Froggy, Cuban and Zebra, which Sandra told the police were the nicknames for Sergio Crespo, Juan Prieto and defendant, respectively.

On November 2, 1983, a young man told Comacho that he knew who had committed the burglary, but that he was afraid to go to the police with that information. Comacho and the young man went to the office of Comacho's attorney, William Martinez. Present at the office were Comacho and his daughter Sandra, Mr. Martinez, Detectives Elliott and Issac, another attorney named H. Wycliffe Martin, and the young man, whose name was Guillermo and his nickname, Moranga. Moranga told the people present that on the date of the burglary he saw defendant, Prieto and Crespo enter Comacho's home and leave with a box.

On November 3, 1983, the detectives arrested defendant in an alley at 5300 N. Ashland after Sandra Comacho had alerted the police that he was there. The detectives gave defendant *Miranda* warnings, which he indicated he understood. They then took him to the police station, where he was given a second set of *Miranda* warnings. Defendant thereafter told the police that he, Prieto and Crespo entered Comacho's home because they wanted his safety box. Defendant claimed that while he waited in Comacho's kitchen, the other two men obtained the box from the bedroom. They then left the home. Defendant gave the police Prieto's address and they subsequently arrested him. Prieto thereafter gave the police Crespo's address and they also arrested him.

The following day, on November 4, 1983, Assistant State's Attorney Snow met with defendant and gave him *Miranda* warnings, which he indicated he understood. Defendant made a written, signed statement admitting that he entered Comacho's apartment, but that he became afraid and went outside. Thereafter, Detective Elliott spoke to defendant, who said that he had heard that there was $40,000 worth of property in Comacho's home, so he and his friends entered the home by using a screwdriver, took the safety box, left, and split the proceeds.

Subsequently, defendant admitted to Detective Elliott and Assistant State's Attorney Snow that he knew the box was in Comacho's home, but he needed help to carry it out.

Approximately five weeks before trial, Comacho saw a co-worker,

Juan Rojas, wearing a distinctive Columbian ring which apparently was the ring that had been in Comacho's safety box. Rojas told Comacho that he had purchased the ring from Alepeo Estruch, who had bought it from defendant.

Prior to trial, the court denied defendant's motions to quash arrest and to suppress statements, finding that there was probable cause to arrest defendant and that his statements were voluntary.

■■ Defendant first contends that he was denied due process by the State's failure to disclose the existence of an informant. He argues that his sixth amendment right of confrontation was violated because the informant did not testify and he was thus denied his right to cross-examine the informant. We disagree.

During discovery the State must reveal to a defendant only those witnesses which may be called at trial. (107 Ill. 2d R. 412(a)(i).) Moreover, disclosure of an informant's identity is not required where it is a prosecution secret and a failure to disclose it will not infringe the constitutional rights of the accused. (107 Ill. 2d R. 412(j)(ii).) The purpose of this informer's privilege, under which the State may withhold the identity of informants who furnish the police with information about crimes, is to encourage citizens to communicate their knowledge of crimes to the police. *Roviaro v. United States* (1957), 353 U.S. 53, 59-60, 1 L. Ed. 2d 639, 644-45, 77 S. Ct. 623, 627.

■ In determining whether a defendant's constitutional rights have been violated by nondisclosure of an informant's identity, a court must decide whether the testimony of the informant is necessary to show the innocence of the accused as opposed to showing merely that probable cause existed for arresting the defendant. (*McCray v. Illinois* (1967), 386 U.S. 300, 305, 18 L. Ed. 2d 62, 67, 87 S. Ct. 1056, 1059; *People v. Lewis* (1973), 12 Ill. App. 3d 762, 764, 301 N.E.2d 469, *aff'd* (1974), 57 Ill. 2d 232, 311 N.E.2d 685.) In order to force disclosure of an informant's identity, a defendant must demonstrate to the trial court that the defendant's theory of defense requires the State to reveal the informant's identity. The court must then balance the public interest in encouraging informants to come forward against a defendant's right to prepare his defense. *Roviaro v. United States* (1957), 353 U.S. 53, 61-62, 1 L. Ed. 2d 639, 645-46, 77 S. Ct. 623, 628-29.

■ In the case at bar, the informer's privilege applied because the informant, Moranga, was a frightened citizen with information about a crime. Moranga did not testify at trial, and the State never intended on calling him to testify. The information he gave to the police, and which was adduced at trial through Comacho's testimony,

was used only to show the jury that the police had probable cause to arrest defendant. Moreover, Moranga's information would not have shown defendant's innocence. Consequently, defendant's constitutional rights were not violated.

■ Defendant next contends that he received an excessive 10-year sentence, which was inconsistent and disparate with his coconspirator's four-year sentence. We disagree.

In sentencing a defendant, it is proper for a court to consider, among other things, the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. (*People v. Ward* (1986), 113 Ill. 2d 516, 526, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) In addition, the court may consider a defendant's lack of remorse, the court's perception that the defendant committed perjury, and a defendant's failure to show a penitent spirit. (*People v. Ward* (1986), 113 Ill. 2d 516, 527-29, 499 N.E.2d 422.) The trial court's sentencing decision will not be disturbed on review absent an abuse of discretion. *People v. Cabrera* (1987), 116 Ill. 2d 474, 494, 508 N.E.2d 708, citing *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

■ In the case at bar, the trial court did not abuse its discretion in sentencing defendant. First, the 10-year sentence falls within the statutory range of 4 to 15 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(4).) In addition, the court determined that defendant showed no remorse and had committed perjury at the hearing on the motion to suppress, where he claimed the police beat him while he was in custody and denied admitting any involvement in the burglary. The court also considered defendant's potential to be a useful citizen, his lack of penitent spirit, and his prior criminal history. Furthermore, the mere discrepancy in sentences between the codefendants does not warrant a reduction in defendant's sentence. (*People v. Thompson* (1967), 36 Ill. 2d 478, 482, 224 N.E.2d 264, *cert. denied* (1967), 389 U.S. 870, 19 L. Ed. 2d 151, 88 S. Ct. 155.) Finally, it was proper for the trial court to grant the codefendant, who pleaded guilty, leniency and sentence him to the minimum of four years. (See *People v. Sivels* (1975), 60 Ill. 2d 102, 104-06, 324 N.E.2d 422.) In any event, defendant has not provided this court with a record which would allow us to make comparisons between the sentences, as we do not have a transcript or a presentence report pertaining to the codefendant. See *People v. Jaffe* (1978), 64 Ill. App. 3d 831, 837, 381 N.E.2d 1018.

■ Next, defendant contends that the following remarks by the

trial judge during *voir dire* deprived him of a fair and impartial trial:

"And to the left of Mr. Decker is the reason that we are all joined here today. It's the sine qua non of this case; he's the defendant, Armando Sanchez."

\* \* \*

"Mr. Armando Sanchez is the reason that we are here. If it wasn't for Mr. Sanchez you wouldn't be needed in this courtroom today or I nor defense lawyers or these prosecutors, court reporter, clerk or anybody else."

Initially, we note that by not objecting at the time the comments were made and by not raising it in his post-trial motion, defendant has waived review of this issue. In any event, the remarks were not so prejudicial as to deprive defendant of a fair trial.

■ In order for a trial court's remarks to be prejudicial, they must convey the impression to the jury that a witness is not worthy of belief, that a witness' story is false, or that the court assumes the defendant's guilt. (See *People v. Sprinkle* (1963), 27 Ill. 2d 398, 399-403, 189 N.E.2d 295.) A "verdict will not be disturbed unless the judge's remarks constituted a material factor in the conviction or unless prejudice to the defendant appears to be their probable result." *People v. Heidorn* (1983), 114 Ill. App. 3d 933, 937, 449 N.E.2d 568, *appeal denied* (1983), 96 Ill. 2d 545.

In the case at bar, the alleged prejudicial remarks by the trial court were merely the court's way of introducing defendant to the potential jurors. After the court did so it admonished the jury that defendant was presumed innocent and that the State had to prove his guilt beyond a reasonable doubt. Furthermore, defendant has failed to show how the court's remarks prejudiced him. Moreover, the comments are not as egregious as those made by the courts in the cases defendant cites. See *People v. Tyner* (1964), 30 Ill. 2d 101, 104, 195 N.E.2d 675; *People v. Kelley* (1983), 113 Ill. App. 3d 761, 766, 447 N.E.2d 973, *appeal denied* (1983), 96 Ill. 2d 546.

■ Defendant next contends that the court improperly admitted hearsay testimony. He argues that the primary source of the hearsay was the alleged identification of defendant by Moranga, the informant. Defendant asserts that Comacho improperly testified that Moranga identified defendant as the offender. Therefore, defendant argues that he was denied the right to confront his accuser. We disagree.

Statements which might be considered hearsay may be admitted if offered for the limited purpose of explaining police action or why a defendant was arrested. (*People v. Green* (1985), 136 Ill. App. 3d

361, 365-66, 483 N.E.2d 606, *appeal denied* (1986), 111 Ill. 2d 573, 488 N.E.2d 272, *vacated on other grounds* (1987), 479 U.S. 1076, 94 L. Ed. 2d 131, 107 S. Ct. 1270.) Conversations between police and an anonymous informant fall into this category of admissible evidence. *People v. Munoz* (1982), 103 Ill. App. 3d 1080, 1083, 432 N.E.2d 370, *appeal denied* (1982), 91 Ill. 2d 577.

■ Here, testimony concerning conversations with the anonymous informant, neighbors of the Comacho family and various police officers was admitted to explain both the subsequent actions taken by Comacho and the course of the detectives' investigation. The alleged hearsay was not offered to prove the truth of the matters asserted, but to show what led to defendant's arrest. It was properly admitted.

■ Defendant's next contention is that he was denied a fair trial by the State's improper opening statement and closing argument. Defendant complains of the following: (1) in its opening, the State made references to hearsay statements that could not be proved up at trial, and the State told the jury that two other people had admitted their part in the crime charged; and (2) in its closing, the State commented that the defense attorney had complicated the case as much as he could. We do not agree that defendant was prejudiced by those comments.

First, in its opening, the State referred to various conversations. Those conversations, which were ultimately admitted during trial, were not improper hearsay because they were offered and admitted to show subsequent actions taken by Comacho and the police.

■ Next, in its opening, the State told the jury that two other individuals had "admit[ted] their part in this incident." While this statement was improper, as was the court's overruling defendant's motion to strike it, the fact that the two codefendants confessed was not mentioned again during the trial. In light of all of the other evidence against defendant, we find that the comment did not constitute reversible error. Moreover, the State did not urge the jury to find defendant guilty based on his codefendants' admissions. See *People v. Ward* (1984), 101 Ill. 2d 443, 453-54, 463 N.E.2d 696, citing *People v. Sullivan* (1978), 72 Ill. 2d 36, 43-44, 377 N.E.2d 17.

■ Lastly, the prosecutor's comment about defense counsel in his closing was improper, but does not constitute reversible error because defendant has failed to show how the remark substantially prejudiced him. (See *People v. Pittman* (1982), 93 Ill. 2d 169, 176, 442 N.E.2d 836.) In addition, the court's prompt sustaining of defendant's objection to the comment cured any error. *People v. Bap-*

*tist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.

■■ ■ Finally, defendant contends that he was not proved guilty beyond a reasonable doubt. We disagree.

It is axiomatic that a reviewing court will not substitute its judgment for that of the trier of fact, whose duty it is to weigh the evidence and credibility of the witnesses, and to resolve any inconsistencies therein. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In order to convict a defendant of residential burglary the State must prove that the defendant entered the house of another, that such entry was unauthorized, and that the defendant entered with the intent to take property from the house. *People v. Yager* (1984), 128 Ill. App. 3d 702, 705, 471 N.E.2d 244; Ill. Rev. Stat. 1985, ch. 38, par. 19—3.

■■ After reviewing the record, we find that defendant was convicted of residential burglary beyond a reasonable doubt. The State in obtaining the conviction did not rely on the informant's identification of the defendant. The informant did not testify and his information was used only to further the police investigation. Moreover, defendant's confessions, which the trial court found defendant made voluntarily, and which were corroborated by the testimony of Alepeo Estruch in which he stated that he purchased from defendant, whom he had known for seven or eight years, a ring that was stolen in the burglary, were sufficient to prove defendant's guilt beyond a reasonable doubt. See *People v. Neal* (1985), 111 Ill. 2d 180, 195, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

QUINLAN, P.J., and MANNING, J., concur.