THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD R. WOOTON, Defendant-Appellant.

Third District   No. 3—89—0445

Opinion filed June 13, 1990.—Rehearing denied July 19, 1990.

592

Richard H. Parsons, of Peoria, for appellant.

Kevin W. Lyons, State's Attorneys, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Defendant-appellant, Ronald R. Wooton (defendant), appeals from the circuit court's order dated July 21, 1989, wherein the court entered judgment on the jury verdicts finding defendant guilty of first degree murder and concealment of homicidal death. The same order also sentenced defendant to a term of natural life imprisonment for the first degree murder conviction and a concurrent term of five years' imprisonment for the concealment of homicidal death conviction. No questions are raised concerning the charging instruments.

On September 6, 1987, defendant was charged by indictment with first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)), concealment of a homicidal death (Ill. Rev. Stat. 1987, ch. 38, par. 9—3.1(a)) and solicitation of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a)), all arising from an incident on or about April 24, 1988, wherein Kimberly Ray (Ray) was fatally shot with a gun and her body buried. A jury found defendant guilty of all charges on April 24, 1989.

On the evening of April 24, 1988, Ray, defendant, James Martin (Martin) and John Hanson (Hanson) were all at a tavern in Chillicothe, Illinois. While at the tavern, Ray and defendant got into an argument wherein Ray told defendant, "Wait until I get you to court next week and testify." In response, defendant apparently told Ray to shut her mouth and also to continue eating because that was the last supper he was buying for her. The history behind these statements has to do with a Federal investigation wherein Ray was subpoenaed to testify against defendant before a Federal grand jury on April 11, 1988. This

hearing was canceled but the evidence indicates Ray was still going to be called upon to testify sometime in May of 1988.

Later during the evening of April 24, 1988, Ray, defendant, Martin and Hanson left the tavern. Defendant and Ray were in Ray's vehicle, and Martin and Hanson followed in another vehicle. Ray's vehicle left the road and overturned. Ray and defendant then argued over who caused the accident. They all then left to go to defendant's house, where Ray began damaging furniture and other contents of defendant's home. Another argument ensued between Ray and defendant which ended when Ray went to the back room of defendant's house. At that point defendant told Martin to get "rid of Miss Ray." He handed Martin a knife which was six inches long closed. Martin went down the hallway towards Ray but did not use the knife. Ray came back towards the living room and again argued with defendant, while in the process knocking a VCR, stereo and television over. A shoving match ensued between defendant and Ray, and Martin then reappeared in the living room with a rifle, grabbed Ray and exited the house. Outside, Ray tempted Martin to shoot her, and he shot her twice. Defendant directed Martin and Hanson to get rid of Ray's body. Martin and Hanson loaded Ray's body into the trunk of Ray's car, found an isolated area, and buried her body.

After closing arguments and instructions, the jury commenced deliberations at 12:50 p.m. At approximately 9:30 p.m., the trial judge recalled the jury and advised that sequestration arrangements would need to be made in the event the jury would not be able to reach a verdict. Further, that if any juror had any special needs or wanted to send a message, arrangements would be made to accommodate those needs. Moreover, prior to the jury being recalled, the judge stated for the record that he had discussed his intention to recall the jury for this purpose with the attorneys and no objection was made. The jury returned to deliberations and reached a verdict at 10:55 p.m.

Defendant phrases the following three issues for appeal. First, whether the trial court's comments to the jury impermissibly hastened the jury's guilty verdicts. Second, whether the trial court erred in allowing into evidence motive testimony respecting the Federal grand jury investigation over objection of counsel. Third, whether defendant's sentence was unconstitutionally harsh considering that codefendants' respective sentences were grossly disparate with defendant's sentence.

■ With respect to the trial court's comments to the jury, defendant cites *People v. Friedman* (1986), 144 Ill. App. 3d 895, 494 N.E.2d 760, and *People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d

868, as support for the proposition that the trial court's comments hastened the jury's verdict. In *Friedman* and *Branch*, the trial court made remarks to the jury about the need to arrange overnight accommodations. In both cases the jury had been deliberating for better than four hours, but after the trial court's remarks returned verdicts in 5 and 10 minutes, respectively. Thus, the notably brief deliberation after the court's remarks created an inference that the court's remarks were a primary factor in the procurement of a verdict. In *Friedman*, however, the court noted that simply informing a jury it will be sequestered after a certain time is not necessarily coercive in nature. The test is whether under the totality of the circumstances the language used by the trial court coerced or interfered with the deliberations of the jury to the prejudice of the defendant. *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.

■■ We do not believe the trial court's remarks to the jury regarding the need to make overnight arrangements coerced the jury into hastily making a decision. This is not a situation where the jury appears to have gone back into the jury room and immediately put the matter to vote and returned with a verdict. Moreover, the trial court's remarks contained clear statements to the jury that the court's purpose was not to pressure the jury into reaching a verdict. *Friedman* and *Branch* are not controlling as no inference can be drawn that the trial court's remarks affected the jury's decision-making process.

■■ ■ The trial court allowed the State to present testimony regarding a Federal grand jury investigation wherein Ray was supposedly a witness against defendant and further allowed the State to argue that this evidence created a motive for defendant to cause the death of Ray. Defendant argues that the evidence presented to show motive of defendant was illogical and irrelevant because Ray was murdered after her subpoenaed appearance before the grand jury was canceled and she had no notice of when, if ever, she was to subsequently testify. Moreover, defendant insists that Ray's statement to defendant, "Wait until I get you to court next week and testify," was not conclusive as to what the couple was arguing about at the tavern on April 24, 1988. Defendant, however, ignores other evidence which puts into context the statement made to defendant by Ray as well as providing support for the State's motive theory. Other testimony established that Ray, along with Vincent Worthington (Worthington), was scheduled to testify on April 11, 1988. That date was canceled but both Ray and Worthington were present at the Federal prosecutor's office on April 11, wherein Worthington was served with a sub-

poena to testify on April 20, 1988. Both Ray and Worthington were told, however, to call the prosecutor's office on April 19 to find out if they would be needed to testify the next day. Although Ray did not call on the 19th, Worthington did call and was informed that the investigation had been postponed until May and that he should call back prior to May 11, 1988. In light of this background, Ray's previously quoted statement to defendant about testifying against him and his responses of telling her to shut her mouth and stating it was the last supper that he was buying for her lend support to the theory that defendant had Ray murdered to prevent her from testifying against him. Generally, any evidence which tends to show that the accused had a motive for killing the deceased is relevant and admissible so long as the evidence, to a slight degree, establishes the existence of the motive relied upon. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) Moreover, evidence of other crimes, while not admissible to show propensity to commit crimes, is admissible to show motive (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840; *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6), and the State need not show proof of these other crimes beyond a reasonable doubt. (*People v. Wolfbrandt* (1984), 127 Ill. App. 3d 836, 469 N.E.2d 305.) In this case, the State presented evidence that defendant was the subject of a grand jury investigation and that Ray was to be a witness against him. This evidence in connection with the statements by Ray and defendant on the night of the murder tends to show that defendant had a motive for causing the murder of Ray. We therefore believe the probative value of this evidence outweighed any prejudicial effect to defendant, especially when considering that a jury instruction was submitted advising of the limited purpose for which the evidence was introduced.

■■ Defendant further argues that reversible error occurred when the prosecutor commented on the motive evidence in closing argument. Defendant, however, made no objection to these comments at trial and further failed to enunciate the particular objection in his post-trial motion. It is well settled that a defendant must object to improper comments in closing argument and must also include the issue in his post-trial motion to preserve the issue for appeal. (*People v. Tanner* (1986), 142 Ill. App. 3d 165, 491 N.E.2d 776.) Defendant has therefore waived this issue.

■■ ■ Finally, defendant claims his sentence was unconstitutionally harsh in comparison to the sentences received by his codefendants. We disagree. In order for defendant to argue that his sentence was substantially disparate with the sentences received by his code-

fendants, he must produce records of the codefendants' sentencing circumstances upon which a rational comparison can be made. (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154; *People v. Treece* (1987), 159 Ill. App. 3d 397, 511 N.E.2d 1361.) Defendant has not provided us with the transcripts or other records pertaining to the facts and circumstances surrounding the sentencing of the codefendants. Additionally, the record reveals that the codefendants were cooperative and may have entered into plea negotiations with the State in exchange for their testimony against defendant. It is well settled that a codefendant's willingness to cooperate with law enforcement officials in the prosecution of other offenders may be a mitigating factor in the codefendant's sentence. (*People v. Treece* (1987), 159 Ill. App. 3d 397, 511 N.E.2d 1361; *People v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121.) We find that the defendant has not sufficiently established that the trial court abused its discretion in sentencing defendant to a term of natural life imprisonment.

For all of the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.