THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID ALLEN *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—88—0576, 1—88—1614 cons.

Opinion filed March 31, 1992.

150

Randolph N. Stone, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant David Allen.

Gordon H. Berry, of State Appellate Defender's Office, of Chicago, for appellant Mannie Maddox.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Carol L. Gaines, and Pamela A. Paziotopoulos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant David Allen was convicted of one count of first degree murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), two counts of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1) and one count of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) in a jury trial. Allen was sentenced to an extended term of natural life imprisonment and three consecutive terms of 30 years' imprisonment. Codefendant Mannie Maddox was convicted of one count of first degree murder, two counts of attempted murder and two counts of armed robbery in a simultaneous bench trial. Maddox was sentenced to concurrent extended terms of 70 years' and 60 years' imprisonment. On appeal, Allen contends that (1) the prosecutor committed reversible error when he referred to facts not supported by the evidence, attacked the integrity of defense counsel, and appealed to the passions and sympathies of the jury in his closing argument; (2) the trial court committed reversible error when it permitted Officer Christophersen to testify on redirect examination about the content of his conversation with Allen; and (3) the sentence of natural life imprisonment and three consecutive terms of 30 years' imprisonment imposed by the trial court is excessive and should be vacated or reduced. Maddox contends that (1) the trial court committed reversible error when it restricted defense counsel from cross-examining the State's key witness about any bias or motive to falsely testify; (2) the trial court forgot the crux of Maddox's defense, engaged in improper reasoning processes which were not supported by the evidence and relied on unsupported theories of the evidence when it reached its determination of his guilt; and (3) the State failed to prove him guilty of murder and attempted murder beyond a reasonable doubt. We affirm.

On October 6, 1986, Van Jackson and cab driver Robert Dixon were at a restaurant located at 63rd Street and Marshfield Avenue in Chicago, Illinois. John Gardner, Allen and Maddox entered the restaurant and asked Dixon if he could drive them somewhere in his cab for a fare. Dixon agreed. The five men entered Dixon's cab and drove to his apartment, where all five men went inside and used cocaine. When the cocaine was depleted, the men drove to Maddox's sister's apartment to get money for more cocaine. Maddox was unable to get any money. The men then drove to Ella Phillips' apartment, who is

Allen's girl friend, to get money. Phillips told Allen that she had given her money to her mother. The men then drove to Phillips' mother's apartment. Dixon drove the cab to 53rd and Bishop Street and parked in an alley. Allen left the vehicle while the others remained in the cab. Allen returned about two minutes later, and immediately upon reentering the cab, shot Gardner once in the face. He then shot Dixon three times, once in the neck, once in the right shoulder and once in the head. Allen then shot Jackson once in the back. Jackson pretended he was dead by resting his head against the dashboard. Jackson then witnessed Maddox steal money from Dixon and cocaine from Gardner. As Maddox started going through Jackson's pockets, Maddox said to Allen, "He's moving. *** Shoot him." Allen then shot Jackson once in the leg. Allen and Maddox fled. Jackson drove the cab to 51st and Peoria Street, where he flagged down a police squad car. The occupants of the cab were taken to the hospital, where Dixon died from the multiple gunshot wounds he sustained during the robbery. Gardner survived, but remains partially paralyzed. Jackson has fully recovered.

In a joint trial, the jury found Allen guilty of first degree murder, two counts of attempted murder and one count of armed robbery. After waiving his right to a jury trial, the trial court found Maddox guilty of one count of murder, two counts of attempted murder and two counts of armed robbery. Following a hearing on whether to impose the death penalty, the trial court sentenced Allen to an extended term of natural life imprisonment and three consecutive 30-year terms of imprisonment for the two attempted murder convictions and the armed robbery conviction. Maddox was sentenced to concurrent extended terms of 70 years' imprisonment on the murder charge and 60 years' imprisonment on each of the attempted murder charges. This appeal followed.

■■ Allen contends that the prosecutor committed reversible error by referring to facts not supported by the evidence in his closing argument when he told the jury that Maddox escaped from a second-floor window when police arrived at Allen's apartment to question Allen about the shootings. The prosecutor is allowed wide latitude in his closing argument to the jury, so long as his arguments are based on the evidence presented or any reasonable inferences that can be drawn therefrom. (*People v. Malone* (1991), 211 Ill. App. 3d 628, 636, 570 N.E.2d 584, 590.) We find that there is sufficient evidence in the record to support a reasonable inference that the individual who escaped through the second-floor window of Allen's apartment was Maddox.

Allen next argues that the prosecutor committed reversible error when he contrasted Allen's "cool" behavior with Maddox's "panicky" behavior in his closing argument. We are unable to see how Allen was prejudiced by the prosecutor's comments. Furthermore, even if we were to find that Allen was prejudiced by the comments, any prejudice that resulted was cured when the trial court sustained defense counsel's objection to the prosecutor's comments. See *People v. Thomas* (1990), 199 Ill. App. 3d 79, 100, 556 N.E.2d 1246, 1260.

Allen next argues that the prosecutor committed reversible error when he improperly appealed to the passions and fears of the jury when he suggested that Allen is the source of the climate of violence now existing in the cities of this country and that if they did not convict Allen, he would return to retaliate against Jackson and Gardner for testifying at trial. Whether a prosecutor's closing statements improperly inflamed the passions and fears of the jury is to be determined from the totality of the circumstances surrounding the comments, including the language used and its relationship to the evidence presented in the case. (*People v. Jenkins* (1989), 190 Ill. App. 3d 115, 136, 545 N.E.2d 986, 1000.) Based on a review of the prosecutor's closing argument in its entirety and the overwhelming evidence presented at trial of Allen's guilt, we find that any implication by the prosecutor that Allen is the source of the climate of violence in the United States or that Allen would retaliate against Jackson and Gardner does not constitute reversible error.

Defense counsel also argues that the prosecutor improperly appealed to the jurors' sympathies when he stated in his closing argument that the medical examiner had to dig into the head and brain of Robert Dixon in order to recover the bullets. We find that the record adequately supports the prosecutor's comments.

Allen next contends that the prosecutor improperly attacked defense counsel's integrity when he stated in his closing argument that defense counsel tried to put words into the mouth of Jackson and that defense counsel was suggesting to the jury that the prosecutors were involved in a conspiracy to frame Allen. After reviewing the closing argument in its entirety, we find nothing improper with the prosecutor's comments.

Allen next argues that the trial court committed reversible error when it permitted Officer Christophersen to testify on redirect examination about the content of his conversation with Allen. During cross-examination, Allen's defense counsel questioned Officer Christophersen about a noise he heard in a closet at Allen's apartment while investigating Allen's involvement in the shootings. The following line

of questioning took place during cross-examination by defense counsel of Officer Christophersen:

"Q. Now, while—so, when you heard this noise but in fact Mr. Allen was talking to you or had invited you in was talking to the police when all of this happened, is that right?

A. Well then, we were informed that nobody else was in the apartment other than the kids. And then, we heard the noise and the room—

Q. That's when you heard a—

A. After [Allen] said there was nobody else in the apartment, then we heard the noise.

Q. So, he was talking to you and invited you in?

A. Correct.

Q. That's when you heard this noise. Somebody—and somebody from the outside said someone had jumped out?

A. That's correct."

■ On redirect examination, the prosecutor then inquired, over defense counsel's objection, into the content of the remainder of the conversation between Officer Christophersen and Allen. The completeness doctrine permits a party to introduce the balance of an utterance or writing in order to convey its true meaning or to explain, qualify or otherwise shed light on that portion of a statement introduced by an opponent. (*People v. Hudson* (1990), 198 Ill. App. 3d 915, 924-25, 556 N.E.2d 640, 647; *In re W.D.* (1990), 194 Ill. App. 3d 686, 702-03, 551 N.E.2d 357, 368.) Here, defense counsel elicited, albeit unintentionally, a portion of Officer Christophersen's conversation with Allen during his cross-examination of Officer Christophersen. The prosecutor, therefore, is entitled to develop all circumstances within the knowledge of Officer Christophersen during redirect examination to explain or qualify his previous testimony or to convey the true context of that conversation to the trier of fact. Accordingly, we conclude that the trial court did not commit reversible error when it permitted Officer Christophersen to testify on redirect examination about the content of his conversation with Allen.

Allen next contends that the sentence of natural life imprisonment and three consecutive terms of 30 years' imprisonment imposed by the trial court is excessive and should be vacated or reduced. Section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Code) permits the trial court to sentence a defendant to an extended term of natural life imprisonment if it determines that a murder is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b).) At the sentenc-

ing hearing, the trial court imposed an extended term of natural life imprisonment to run consecutively with three 30-year terms of imprisonment. Allen argues that the murder in the present case involved the simple shooting of Dixon in the head, and that because he died instantly and did not suffer, the murder was no more exceptionally brutal, heinous or indicative of wanton cruelty than the conduct of defendants in numerous other cases.

■ Here, Dixon was fatally shot three times; Gardner was shot once at point-blank range in the face and is permanently paralyzed, described by the trial court as a vegetable; Jackson was shot twice and described by the trial court as "lucky [to be alive], lucky when you (Allen) took your last couple of cracks at him that you ran out of bullets." Our review of the record reveals that the trial court's finding is consistent with the evidence presented. We therefore hold that the extended-term sentence of natural life imprisonment imposed by the trial court was not an abuse of discretion.

■ Allen next contends that the trial court abused its discretion when it imposed consecutive rather than concurrent terms of imprisonment for each of his convictions. Section 5—8—4(b) of the Code permits a trial court to impose consecutive sentences if it determines that the nature and circumstances of the offense and the history and character of the defendant require the imposition of consecutive sentences in order to protect the public from further criminal conduct. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4.) The record indicates that the trial court properly reviewed the nature and circumstances of the offense and the history and character of Allen when it determined that consecutive sentences here were required in order to protect the public from further criminal conduct.

Allen, relying on People v. Parker (1986), 141 Ill. App. 3d 643, 490 N.E.2d 1076, next argues that once a defendant is sentenced to natural life imprisonment, the necessity to protect the public from further criminal conduct is eliminated. We disagree. We find that the public interest may be served by consecutive sentences if Allen's sentence is subsequently modified, commuted or reduced. People v. Leger (1991), 208 Ill. App. 3d 333, 340, 567 N.E.2d 68, 73; see also People v. Wilson (1985), 138 Ill. App. 3d 513, 485 N.E.2d 1264; People v. Bush (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514.

■ Allen next contends that the sentence of natural life imprisonment plus three consecutive terms of 30 years' imprisonment imposed by the trial court violates section 5—8—4(c)(2) of the Code because the aggregate of consecutive sentences exceeds the sum of the maximum terms authorized under section 5—8—2 of the Code for the two most

serious felonies involved. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—2, 1005—8—4.) This contention is without merit. Sections 5—8—2(a)(1) and (a)(2) of the Code permit the trial court to impose a sentence of up to 80 years for a defendant convicted of murder and up to 60 years for a defendant convicted of attempted murder or armed robbery, both of which are Class X felonies. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—2, 8—4, 18—2.) Thus, the trial court may impose consecutive sentences for a period up to 140 years in the present case. Here, the total period of incarceration imposed by the trial court totals only 90 years, well below the maximum period of incarceration permitted under the statute.

For all the foregoing reasons, we conclude that the trial court did not abuse its discretion when it imposed the sentence of natural life imprisonment and three consecutive terms of 30 years' imprisonment.

■ Maddox argues that the trial court committed reversible error when it restricted defense counsel from cross-examining Jackson, the State's key witness, about any bias or motive to falsely testify. Maddox contends that the trial court refused to consider that Jackson had a strong motive to falsify his testimony because his participation in the drug transaction here would constitute a violation of his probation. The record, however, does not support Maddox's contention.

During cross-examination of Jackson, defense counsel elicited from Jackson that he had previously been convicted of possession of a stolen motor vehicle and bail bond violations, and charged but not prosecuted for possession of a controlled substance. While it is true that defense counsel was not permitted to cross-examine Jackson about the effect his involvement or participation in a drug transaction might have on the status of his probation, the record reflects that the trial court was fully aware of the facts and circumstances surrounding Jackson's pending drug charges and probationary status. Defense counsel made the following comments during his closing argument:

"If you believe the only witness against Maddox, what you have is presence and flight, but then you have Van Jackson, a felon, dealing drugs that evening, on probation, with, at least, a reasonable expectation that he will be treated more favorably by testifying for the State.

He denied that that was a consideration, but here's a man who had a case *nolle prossed* [sic] during the process. After the case was charged, he was charged with something on his own, and it was *nolle prossed* [sic], which means the State chose not to pursue it, and they could have reopened it.

He also was on probation when he testified. His violation of probation could easily have been filed for having been involved in a drug deal. It wasn't. So, he had some motive to favor the State's position and, of course, his testimony here differs from what he originally told the police officers."

In its ruling as to the determination of Maddox's guilt, the trial court stated:

"There were a lot of comments by [defense counsel] as to the credibility of Jackson's testimony, but as you review Jackson's testimony, it is very consistent. *** [Jackson] is not a nice person. He's been convicted of crime, but by the same token, as you listen to his testimony, there's no reason to disbelieve him. He could have just as easily, if he was lying, say that Maddox shot him, but he said Allen—Allen is the one who did all of the shooting."

Thus, although defense counsel was unable to fully cross-examine Jackson about the effect his participation or involvement in a drug transaction might have on his probationary status, it is clear that the trial court was fully aware that Jackson may have had a motive to favor the State's position when he testified about the shooting incident. We, therefore, conclude that the trial court did not commit reversible error when it restricted defense counsel's cross-examination of Jackson.

■ Maddox further contends that the trial court "forgot the crux of [Maddox's] defense when entering judgment," "engaged in improper reasoning processes which were not supported by the evidence" and "relied on unsupported theories of the evidence as a major linch-pin in his decision." There is nothing in the record to support these contentions. They are therefore without merit.

Maddox next contends that the State failed to prove him guilty of murder and attempted murder beyond a reasonable doubt. We disagree.

A person will be found legally accountable for the conduct of another if, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, pars. 5—1, 5—2.) The reviewing court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461, 472.) On review, the trial court's judgment

will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to defendant's guilt. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319.

A careful review of the record in a light most favorable to the prosecution demonstrates that a rational trier of fact could have found that Maddox was responsible for the crimes charged or accountable for Allen's conduct beyond a reasonable doubt. There is nothing unsatisfactory, improbable or implausible about the evidence presented by the State in this trial. In Maddox's statement to Assistant State's Attorney Barry Gross, Maddox admitted that he set out with Allen on the evening in question with full knowledge that Allen was carrying a gun. He admitted that he met with Gardner, Jackson and Dixon and engaged in the smoking of cocaine. After the cocaine was exhausted, they set out to find more cocaine. He admitted that he was present when the shooting occurred, although he denied that he searched through the victims' pockets after they had been shot. He remained with Allen after the incident, fled the scene of the shooting with Allen, and was present at Allen's apartment hiding in a closet when police arrived to question Allen about his involvement in the shootings.

Maddox's statement was substantially corroborated by Jackson, who indicated that Maddox's involvement in the crimes was more active than Maddox had acknowledged. Jackson testified that he observed Maddox search through Gardner's and Dixon's pockets for money and cocaine after Allen had shot them. Jackson further testified that while Maddox was going through his pockets after he had been shot, Maddox yelled to Allen, "He's moving. *** Shoot him." We, therefore, conclude that the State proved Maddox guilty of murder and attempted murder beyond a reasonable doubt.

Accordingly, the judgments of the circuit court are affirmed.

Affirmed.

TULLY and CERDA, JJ., concur.