THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT BROWN, Defendant-Appellant.

First District (3rd Division)   No. 1—89—2214

Opinion filed January 20, 1993.—Rehearing denied September 7, 1993.

Michael J. Pelletier and Elizabeth E. Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant was convicted of murder and sentenced to 30 years' imprisonment.

On appeal, defendant raises three issues: (1) the trial court's refusal to allow defendant to present evidence of his exculpatory first oral statement after a State witness testified to his incriminating second oral statement; (2) the sufficiency of the evidence to prove defendant guilty beyond a reasonable doubt; and (3) the propriety of his 30-year sentence.

For the reasons which follow, we affirm defendant's conviction and sentence.

Initially we note that this case comes to us after a second trial. Defendant's conviction following his first trial was reversed by the appellate court in *People v. Brown* (1988), 171 Ill. App. 3d 993, 525 N.E.2d 1119.

Defendant did not testify at trial or present any witnesses. By stipulation, the State introduced the testimony of Eddy Santana, who stated that he and Reynaldo Reyes, the victim, went to the gas station about 7:30 p.m. to put air in Santana's flat bicycle tire. After using the air hose, Santana heard an explosion as the victim attended to an air pump. The victim then walked a few steps and fell.

Three occurrence witnesses (Victor Perea, Nina Colon, and Andy Vasquez) testified on behalf of the State. Their testimony essentially revealed the same sequence of events which resulted in the fatal shooting of the victim, Reynaldo Reyes, about 7:30 p.m. on June 30, 1983, at a gas station located on Western Avenue.

Victor Perea testified that he was playing cards with his sister, Nina Colon, on the third floor of a building overlooking Western Avenue. Looking out the window, Perea could see defendant and his companion, Jose Berrios, walking down the street "constantly looking around like they were casing the area." Perea observed that it was "strange they were walking down Western" because it is the borderline of two rival gangs, the Latin Kings and the Latin Disciples, and "usually nobody walks down the street unless you are going to get hurt." Perea observed that defendant, whom he knew as a member of the Latin Kings, was walking on the side of the street that was the "turf" of the Latin Kings. Perea did not see a weapon in defendant's possession.

Nina Colon corroborated her brother's testimony and added that she saw defendant and Berrios "looking into the gas station" at two individuals who were by the air pumps. Colon saw defendant, whom she had known for four years, and Berrios talking and walking side by side around the gas station. A few minutes later, Colon saw defendant and Berrios kneeling behind a billboard at a railing still peering into the gas station. From her vantage point, Colon next saw one of the individuals at the air pump stumble and fall to the ground.

Andy Vasquez testified that at the time of the shooting he was sitting on the back porch of his second-floor apartment, which is next to the gas station with only a gangway between his apartment and the gas station. A link fence with broken slats surrounded part of the gas station. A guardrail and a billboard ran at an angle across the gas station.

Vasquez focused his attention on two people, later identified as defendant and Berrios, who were walking through the gangway into the alley. Vasquez also saw the two young men, *i.e.*, Santana and the victim, in the gas station fixing a bike wheel. Vasquez watched as defendant and Berrios proceeded to walk around the vicinity of the gas station until they reached a guardrail. Defendant jumped over the guardrail, looked in the direction of Santana and the victim, jumped back over the guardrail, talked to Berrios, and headed to the billboard. While Berrios crawled underneath the billboard and peeked in the direction of the air pump, defendant looked through the broken fence until Berrios joined him. Vasquez then heard an explosion, saw defendant and Berrios run, and saw the victim tumble and fall. Vasquez did not see a gun.

Assistant State's Attorney Ferdinand Minelli testified that he interviewed defendant at the police station on July 14, 1983, while investigating the victim's death. At this time, defendant recounted the events of the day of the shooting.

About 1 p.m. Berrios picked up defendant at his house and they went to a swimming pool. Defendant knew that Berrios had a loaded handgun and had seen Berrios place the gun in his waistband. After spending about two hours at the swimming pool, defendant and Berrios were returning home when they encountered two individuals, who made a sign which represented the Latin Disciples gang. In response, defendant and Berrios represented the sign for the Latin Kings gang. While holding his hand to his waistband where the gun was, Berrios stepped toward the two individuals, who then ran away. Defendant and Berrios also began to run home until they saw two other individuals, later identified as Santana and the victim, whom they knew to be Latin Disciples.

Defendant and Berrios ran in the direction of the gas station and Berrios called out "Come on. Let's go. Let's go." Defendant stated that he knew from Berrios' exclamations that Berrios was going to shoot the individuals at the gas station. Eventually, defendant and Berrios hid behind a fence looking into the gas station at the two individuals at the air pump. Defendant stated that Berrios then fired the gun and they ran away.

At the close of the State's case, defendant made a motion for a directed verdict. Following the denial of this motion, the defense rested without introducing any evidence.

On appeal, defendant first asserts that the trial court erred when it refused to allow Assistant State's Attorney Minelli to be cross-examined regarding defendant's first oral statement, which

was allegedly exculpatory and given to Sergeant Healy and Detective Ciangi at the police station. Defendant maintains that such evidence was admissible under the completeness doctrine as part of a continuing statement, parts of which were introduced. We disagree.

The record reveals that defendant made two oral statements at the police station. The first statement was given to Sergeant Healy and Detective Ciangi. Approximately 1½ hours later, defendant made a second oral statement to Assistant State's Attorney Minelli and Detective Ciangi.

■ A statement made by an accused in custody after his arrest that is offered in his favor is not an admission but rather is hearsay and, as such, a party is excluded from proving his own out-of-court statements. *People v. Young* (1990), 206 Ill. App. 3d 789, 811, 564 N.E.2d 1254; *People v. Dunum* (1989), 182 Ill. App. 3d 92, 99, 537 N.E.2d 898; *People v. Westefer* (1988), 169 Ill. App. 3d 59, 63, 522 N.E.2d 1381.

■ The completeness doctrine is an exception to the hearsay rule and provides that a party may introduce the balance of a writing or an oral statement which has been introduced by an opponent for the purpose of explaining, qualifying or otherwise shedding light on the statement. (*People v. Allen* (1992), 228 Ill. App. 3d 149, 154, 592 N.E.2d 447.) However, the completeness doctrine restricts the admissibility of the balance of a statement already introduced " 'to what was said on the same subject at the same time.' " (*People v. Hudson* (1990), 198 Ill. App. 3d 915, 924-25, 556 N.E.2d 640, quoting *People v. Hosty* (1986), 146 Ill. App. 3d 876, 884, 497 N.E.2d 334.) Moreover, the completeness doctrine does not apply if the testimony to which reference was made was not a part of the conversation the opposing party is attempting to introduce on cross-examination. *People v. Harman* (1984), 125 Ill. App. 3d 338, 342, 465 N.E.2d 1009.

■ The parameters of the completeness doctrine do not stretch as far as urged by defendant in the present case. The first oral statement was neither made at the same time as the second statement nor was it a part of the same conversation with the same people. (*People v. Nicholls* (1992), 236 Ill. App. 3d 725 (the doctrine of completeness was not applicable where the two statements at issue could not be considered contemporaneous since there was about a two-hour time difference between them).) *In re W.D.* (1990), 194 Ill. App. 3d 686, 551 N.E.2d 357, the case relied on by defendant, is easily distinguished from the case at bar. There the questions posed during cross-examination related to the same conversation between

the same people as disclosed during direct examination. Since no such unity of time and participants is shown here, the trial court did not err in excluding evidence regarding defendant's first oral statement.

Defendant next asserts that the proof was only circumstantial and that the testimony of the three eyewitnesses merely placed him near the scene of the murder and thus the evidence was insufficient to prove him accountable for murder.

The State contends that it proved defendant's accountability by establishing that he had the specific intent to promote or facilitate the commission of the offense and that he knowingly aided Berrios in the planning and commission of the offense. We agree.

■ A reviewing court confronted with a challenge to the sufficiency of evidence does not determine whether it finds guilt beyond a reasonable doubt, but rather considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461.) The jury evaluates the inferences to be drawn from the evidence, assesses the credibility of the witnesses, determines the weight to be given their testimony, and resolves any evidentiary conflicts. *Young*, 128 Ill. 2d at 51.

■ A defendant is accountable for the conduct of another if "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c); *People v. Reid* (1990), 136 Ill. 2d 27, 60, 554 N.E.2d 174.

Mere presence at the crime scene does not render a person accountable for the crime. (*People v. Johnson* (1991), 220 Ill. App. 3d 550, 554, 581 N.E.2d 118.) However, under the accountability theory, the State is not required to prove that the defendant actively participated in the overt acts which constituted the offense. *People v. Bell* (1991), 209 Ill. App. 3d 438, 445, 568 N.E.2d 238; *People v. Acklin* (1990), 208 Ill. App. 3d 616, 622-23, 567 N.E.2d 525.

■ We find that the evidence does more than merely place defendant at the scene at the time of the murder. The testimony of the eyewitnesses recounted the events directly leading to and immediately following the firing of the fatal shot. Their uncontroverted testimony placed defendant in consort with Jose Berrios throughout the incident. Moreover, defendant, in his own statement, admitted that he knew Berrios was carrying a loaded gun but accompanied

him anyway. Defendant remained in the company of Berrios when they first confronted two members of a rival gang and caused them to run when Berrios reached for the gun in his waistband. Defendant, knowing that the two individuals at the gas station's air pump were also members of a rival gang, tracked their movement while lurking around the gas station with Berrios. Defendant admitted that he knew Berrios planned to shoot the boys in the gas station but remained. After the shooting, defendant and Berrios fled. In light of these facts presented to the jury, a rational trier of fact could have easily concluded that defendant was legally accountable for murder beyond a reasonable doubt.

Finally, defendant contends that his 30-year sentence is an abuse of the trial court's discretion and is impermissibly disparate with the 20-year term later imposed on Berrios.

The procedural history of the cases involving defendant and Berrios are particularly significant in addressing the sentencing issue raised by defendant.

Following his first jury trial, defendant was convicted of murder for the shooting death of Reyes and received a 30-year sentence. The appellate court subsequently reversed defendant's conviction. (*Brown*, 171 Ill. App. 3d 993, 525 N.E.2d 1119.) Following a second jury trial, which is the matter before this court now, defendant was again convicted of murder and received a 30-year sentence on July 18, 1989.

Berrios was apparently tried as a codefendant with defendant for the murder of Reyes. Following this first trial, Berrios was also convicted of murder but received a 25-year sentence. In a separate appeal, Berrios' conviction was reversed and remanded for a new trial. (*People v. Berrios* (1988), 178 Ill. App. 3d 241, 533 N.E.2d 64.) Instead of proceeding to a second trial, Berrios, at a hearing held on March 30, 1990, withdrew his previously entered plea of not guilty and entered a plea of guilty to the charge of murder pursuant to a plea agreement. The sentencing judge accepted Berrios' guilty plea and the plea agreement, which provided that Berrios would receive a 20-year sentence.

The same judge presided over all of the above proceedings, *i.e.,* the first jury trial of defendant and Berrios, the second jury trial of defendant, and the hearing on Berrios' guilty plea.

Absent an abuse of discretion, a reviewing court will not disturb a sentence which falls within the statutory limits. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641; *People v. Abernathy* (1989), 189 Ill. App. 3d 292, 315, 545 N.E.2d 201.

In 1983, the statutorily mandated term for murder ranged from 20 to 40 years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(a).) Accordingly, a 30-year term of imprisonment falls within the parameters dictated by statute.

A sentencing judge is afforded broad discretionary power to consider various sources and types of information so that a sentencing determination can be made within the parameters established by the legislature. *People v. Williams* (1992), 149 Ill. 2d 467, 490, 599 N.E.2d 913.

In the present case, the sentencing judge's involvement in the matters concerning the murder of Reyes was extensive. The record reveals that he considered all the appropriate factors at the sentencing hearing following defendant's second trial, and we have no reason to find an abuse of discretion.

Finally, defendant asserts that the 10-year disparity between his sentence and Berrios' sentence is impermissible.

■ Defendant correctly submits that "fundamental fairness and respect for the law require that defendants similarly situated should not receive grossly disparate sentences." (*People v. Milton* (1989), 182 Ill. App. 3d 1082, 1093, 538 N.E.2d 1227 (a 22-year disparity is too great).) However, disparate sentences are not *per se* improper and will not be disturbed where they are justified by differences in the nature and extent of a defendant's participation in the offense, by differences in the criminal records of the participants, by a defendant's greater relative maturity, or by a defendant's greater rehabilitative potential. *People v. Centanni* (1987), 164 Ill. App. 3d 480, 493, 517 N.E.2d 1207; *People v. Bergman* (1984), 121 Ill. App. 3d 100, 105, 458 N.E.2d 1370.

Moreover, although an accused cannot be penalized for exercising his right of trial, a sentencing court can grant dispositional concessions to a defendant, such as Berrios, who pleads guilty. *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422; *People v. Sanchez* (1987), 163 Ill. App. 3d 186, 191, 516 N.E.2d 556; *Bergman*, 121 Ill. App. 3d at 107-08 (a 19-year disparity in sentences was permissible where the codefendant who received the lesser sentence negotiated a plea of guilty which included his willingness to cooperate with authorities and to testify against the defendant).

Notably, Berrios entered into a plea agreement after defendant was convicted in his second trial and after defendant was sentenced to 30 years' imprisonment. Plea bargaining plays an important role in our criminal justice system and is to be encouraged since, among other things, it leads to prompt disposition of cases, preserves finite

judicial and financial resources, and permits the State to focus its prosecutorial efforts where they are most needed. *People v. Boyt* (1985), 109 Ill. 2d 403, 416, 488 N.E.2d 264.

For us to consider reducing a sentence because it was substantially disparate with a codefendant's sentence, a defendant must produce records of the codefendant's sentencing circumstances upon which a rational comparison of the sentences imposed can be made by the reviewing court. (*People v. Kline* (1982), 92 Ill. 2d 490, 509, 442 N.E.2d 154; *People v. Ralon* (1991), 211 Ill. App. 3d 927, 957, 570 N.E.2d 742; *People v. Wooton* (1990), 198 Ill. App. 3d 591, 596-97, 555 N.E.2d 1214; *Milton*, 182 Ill. App. 3d at 1094; *People v. Goble* (1984), 125 Ill. App. 3d 289, 291, 465 N.E.2d 1371.) When a defendant fails to produce sufficient records, the court cannot determine whether the trial court abused its discretion in imposing the sentence. *Milton*, 182 Ill. App. 3d at 1094.

■■ The sole document provided to this court regarding the sentencing of Berrios is the transcript of his guilty plea hearing at which time the parties waived an updated presentence investigation and any arguments in aggravation or mitigation. Furthermore, Berrios declined the judge's invitation to say anything before sentence would be imposed. "Where a codefendant's sentence is attributable to his having agreed to enter a plea of guilty, such a sentence does not provide a valid basis of comparison." *Centanni*, 164 Ill. App. 3d at 494.

In addition, we note that during oral argument, defense counsel advanced numerous arguments based on alleged statements made by the trial court at the first sentencing hearing which is not included in the record now on appeal. It is an elementary principle that an appellate court cannot consider matters outside the record. *E.g., People v. Gholston* (1984), 124 Ill. App. 3d 873, 897, 464 N.E.2d 1179.

In *People v. Blake* (1985), 130 Ill. App. 3d 948, 957, 474 N.E.2d 892, the defendant was not entitled to relief where the defendant challenged the sentence imposed but failed to provide a report of proceedings of the sentencing hearing.

Where the defendant fails to provide the appellate court with any records relative to the codefendants or the report of sentencing proceedings or presentencing report or full transcript, there is nothing in the record that would empower a reviewing court to act. (See *Kline*, 92 Ill. 2d at 508-09; *Centanni*, 164 Ill. App. 3d at 493-94; *Sanchez*, 163 Ill. App. 3d at 191; *People v. Jaffe* (1978), 64 Ill. App. 3d 831, 837, 381 N.E.2d 1018; *People v. Holman* (1976), 43 Ill.

App. 3d 56, 61, 356 N.E.2d 1115.) In light of the insufficient record, we find no basis to disturb defendant's sentence.

For all the foregoing reasons, we affirm the conviction and sentence.

Judgment affirmed.

TULLY, P.J., and CERDA, J., concur.