*In re* K.J., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. K.J., a Minor, Respondent-Appellee).

First District (4th Division)   No. 1—01—1025

Opinion filed November 7, 2002.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and Julia S. Rodenkirch, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Renee C. Norris, Assistant Public Defender, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
The State appeals the circuit court's order denying its motion to

permit respondent K.J.'s transfer to the jurisdiction of the criminal division of the court for prosecution as an adult. The State contends that the court erred in failing to find that there was probable cause to believe that respondent was accountable for the charged offenses.

The State filed a petition for adjudication of wardship alleging that the 16-year-old minor-respondent was delinquent in that he had committed the offenses of aggravated battery/great bodily harm, aggravated battery with a firearm and aggravated discharge of a firearm on September 8, 2000. The State then filed a presumptive transfer motion to permit respondent to be prosecuted under the criminal laws of this state. 705 ILCS 405/5—805 (West 2000).

At the transfer hearing, Chicago police detective Scott Lorotkvich testified that about 11 p.m. on September 8, 2000, he was assigned to investigate a report of an aggravated battery at 8700 South Yates. There, he spoke with Antoine Sneed, who told him that he, Johnny Patterson, DeJohn Pierce, Jerry Butler and "Weasle" were walking to the store at 8700 South Yates when they were approached by five individuals who identified themselves as Blackstone gang members. One, later identified as respondent, was approximately 5 feet 2 inches tall, wearing braids and beads in his hair and a red shirt. He came up to Sneed and said: "Chief crazy around here, all is well." Respondent then asked him why he was wearing a blue T-shirt in "Moe" territory and threatened to kick his "ass" when he came out of the store. Detective Lorotkvitch explained that these slogans were identified with the Blackstone street gang and that "Moe" was another word for a member of that gang. While Sneed and Weasle were in the store, they heard three gunshots outside, and they ran home when the shooting stopped.

About 1 a.m. the following morning, Detective Lorotkvich interviewed DeJohn Pierce at the station. Pierce told him that he, Patterson and Butler were walking behind Sneed and Weasle when several individuals confronted them and shouted gang slogans at Sneed. When Sneed and Weasle went into the store, respondent approached Pierce's group. Standing within one or two feet of Patterson, respondent told Patterson that he would air or shoot the place out and that he would not even need his "strap (handgun) to box your ass out."

While making these threats, respondent made continuous motions towards his pocket, and Pierce believed he observed the outline of a handgun there. Pierce also related that the persons with respondent began to surround him and his two friends, making similar motions towards their waistbands as if they had weapons. Respondent then took off his hat and made a quick motion towards Patterson as if to

throw a punch. Patterson, however, reacted by punching respondent and knocking him to the ground. At that point, another individual pulled out a revolver and fired two shots at Patterson. Pierce helped Patterson run from the scene to 87th Street and Crandon where the police and paramedics were called.

Detective Lorotkvitch spoke with the doctor who treated Patterson at Christ Hospital and learned that Patterson had sustained multiple gunshot wounds, two to his left side above the waist and another from a bullet that traversed his front stomach area and lodged in his groin. The doctor also reported that Patterson had sustained a self-defense wound to his right thumb.

Detective Lorotkvich then interviewed Cory Robinson, who told him that he was with respondent and "Cameo" at 8700 South Yates when the incident occurred. Robinson stated that respondent had gotten into a confrontation with a person much larger than himself by making gang threats and threatening to shoot up the place. Robinson also verified that Patterson struck respondent and knocked him to the ground and that Cameo then pulled out a revolver and shot the victim twice.

Later that evening, Detective Lorotkvich conducted a lineup where Pierce, Butler and Sneed independently identified respondent and Cameo as the two aggressors in the incident. Butler also identified Robinson as being present with respondent and Cameo.

Following these identifications, Detective Lorotkvich interviewed Patterson at his home. Patterson described the incident in essentially the same manner as his friends and viewed a photo array. Patterson identified respondent as the person who confronted and threatened him and Cameo and Robinson as being on the scene.

Detective Lorotkvich interviewed respondent about 1:30 a.m. on September 10, 2000, in the presence of an assistant State's Attorney and a youth investigator. After being advised of his *Miranda* rights, respondent related his version of the incident. Respondent told him that he, Cameo Johnson and Cory Robinson walked Robinson's girlfriend to the bus stop, then went toward the liquor store. Respondent said that he was a member of the Blackstone street gang and was aware that Cameo was carrying a gang handgun as protection in the event they encountered rival gang members in the area of 8700 South Yates.

Respondent also said that he then confronted a much larger person at the liquor store and made several gang threats, *i.e.*, "Blackstones run it around here," and "all is well." He said that he did not intend to fight this person and just wanted to call his bluff. Respondent then pulled his hat off, and when he made a motion towards this person, he was punched in the face.

Gersley Kendricks, the stepfather of Johnny Patterson, was called as a witness by respondent. Kendricks testified that he first talked to Patterson about the incident at the hospital on the evening it occurred. Patterson, who is 6 feet 4 inches tall and weighs about 200 pounds, said that he was walking to the store at 87th and Yates when he was confronted by a young man who said "let's air this place out." Patterson was told by someone that he had knocked the person unconscious.

The circuit court found no probable cause that respondent aided, abetted or encouraged the charged offenses and denied the State's motion for transfer. On appeal, the State contends that there was probable cause to believe that respondent was accountable for these crimes, and as a result, the court's denial of its motion to transfer respondent to the criminal jurisdiction was erroneous and should be reversed.

■ Section 5—805(2)(a) of the Juvenile Court Act of 1987 (Act) provides in pertinent part:

"(2) Presumptive transfer.

(a) If the State's Attorney files a petition, at any time prior to commencement of the minor's trial, to permit prosecution under the criminal laws and the petition alleges the commission by a minor 15 years of age or older of: (i) a Class X felony other than armed violence; (ii) aggravated discharge of a firearm; *** and, if the juvenile judge assigned to hear and determine motions to transfer a case for prosecution in the criminal court determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption that the minor is not a fit and proper subject to be dealt with under the Juvenile Justice Reform Provisions of 1998 [citation] and that, except as provided in paragraph (b), the case should be transferred to the criminal court." 705 ILCS 405/5—805(2)(a) (West 2000) (section 805(2)(a)).

Section 5—805(2)(b) of the Act (705 ILCS 405/5—805(2)(b) (West 2000)) (section 5—805(2)(b)) provides that the court shall enter an order permitting prosecution under the criminal laws unless the court finds, based on clear and convincing evidence, that the minor would be amenable to the care, treatment, and training programs available through the juvenile court.

Section 5—805(2)(a) requires that a probable cause hearing be held for such a motion to transfer, and the rebuttable presumption in favor of transfer applies only if the court finds probable cause to believe that the allegations in the petition and motion are true. *In re W.J.*, 284 Ill. App. 3d 203, 672 N.E.2d 778 (1996). A transfer hearing is not adjudicatory in nature. *People v. Taylor*, 76 Ill. 2d 289, 391 N.E.2d 366 (1979). Rather, it has been found to resemble a preliminary hear-

ing where the court determines whether the charged offense has been committed, and, if so, whether there is probable cause to believe that it was committed by the accused. *People v. P.H.*, 145 Ill. 2d 209, 582 N.E.2d 700 (1991) *(P.H.)*. The proceeding does not seek to determine guilt or innocence. *P.H.*, 145 Ill. 2d at 229.

In this case, the evidence clearly showed that Patterson had been shot with a gun and injured. Since respondent did not do the shooting, the inquiry focused on whether there was sufficient evidence (see *In re R.T.*, 271 Ill. App. 3d 673, 679, 648 N.E.2d 1043 (1995) *(R.T.)* ("some evidence" in support of the criminal conduct charged is sufficient) to establish probable cause that respondent was accountable for the shooting.

■ A person is legally accountable for the criminal conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 2000).

This section incorporates the common design rule, which provides that where two or more persons engage in a common criminal design or agreement, any acts committed by one person in the furtherance of it are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts. *People v. Terry*, 99 Ill. 2d 508, 460 N.E.2d 746 (1984). Evidence of the person's involvement in a gang or gang-related activity is admissible to show common purpose or design provided that such membership or activity is related to the crime charged. *People v. Jones*, 259 Ill. App. 3d 905, 632 N.E.2d 293 (1994). Moreover, where the evidence indicates that the person was involved in the spontaneous acts of the group, the fact that the criminal acts were not committed pursuant to a preconceived plan is no defense. *In re W.C.*, 167 Ill. 2d 307, 657 N.E.2d 908 (1995).

■ The evidence presented at the transfer hearing showed that respondent told police that he was a member of the Blackstone street gang and on the night in question was with Cory Robinson and Cameo Johnson. He also admitted that he knew Cameo was carrying a "nation" gun for protection against rival gang members who might be in the area in which they were walking. See *People v. Brown*, 249 Ill. App. 3d 986, 670 N.E.2d 1090 (1993). Other evidence showed that respondent confronted Sneed and Weasle with gang slogans identified with the Blackstone street gang and threatened to kick Sneed's "ass" when he left the store.

Respondent then confronted Patterson with threats to air or shoot the place out and physically harm Patterson. As he talked, respondent reportedly made continuous motions towards his pocket, as did his companions, who also began to surround Patterson and his friends. Respondent then took off his hat and made a quick motion towards Patterson as if he was going to throw a punch. Patterson, however, punched respondent first, knocking him to the ground. At that point, Cameo pulled out a revolver and fired two shots at Patterson.

Although mere presence at the scene of an offense does not render one accountable (*People v. Taylor*, 164 Ill. 2d 131, 646 N.E.2d 567 (1995)), the evidence in this case shows that respondent was not only present, but with knowledge that his companion was armed against an encounter with rival gang members, initiated such contact with Patterson and his companions using provocative gang slogans and threats of physical harm. Through these actions and his feigned movement toward Patterson, he created the situation that led to the physical contact and the shooting. See *People v. Eubanks*, 283 Ill. App. 3d 12, 669 N.E.2d 678 (1996). The composite activity also evidenced a community of unlawful purpose to render him accountable for the criminal acts charged. *People v. Torres*, 100 Ill. App. 3d 931, 427 N.E.2d 329 (1981).

The State presented sufficient evidence to establish probable cause to believe that respondent was accountable for the charged offenses. The circuit court abused its discretion in denying the State's motion to transfer based on its ruling that there was no probable cause. *R.T.*, 271 Ill. App. 3d at 679.

For the reasons set forth above, the circuit court's order is reversed and the cause is remanded for further proceedings consistent with section 5—805(2)(b).

Reversed and remanded.

THEIS, P.J., and KARNEZIS, J., concur.